UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X

MEDISIM LTD.,

               **Plaintiff,**

  - against -

BESTMED LLC,

               **Defendant.**

----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4-23-12

**MEMORANDUM
OPINION AND ORDER**

**10 Civ. 2463 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

       Medisim Ltd. ("Medisim") brings this action against BestMed LLC ("BestMed") for patent and copyright infringement, unfair competition, false designation of origin, false advertising, deceptive acts and practices, unfair competition, and unjust enrichment. On March 6, 2012, I issued an opinion on cross-motions to exclude various expert reports ("March Opinion").  Medisim now moves under Local Rule 6.3 for re-consideration of the March Opinion as it relates to its experts, Lipson and Keegan.[1]  With the Court's permission, BestMed

---

[1]    *See* Medisim's Memorandum of Law in Support of Its Motion for Reconsideration Pursuant to Local Rule 6.3 ("Medisim Mem.").

-1-

formally opposed the motion.[2]  For the reasons stated below, the motion is denied in part and granted in part.

## II.    BACKGROUND

The background to this motion, including a description of the Lipson and Keegan Reports, is fully set forth in the March Opinion.  I excluded that portion of the Lipson Report that discussed whether the KD-2201 meets the "deep tissue temperature" limitation of the '668 Patent as unreliable, and also barred him from testifying at trial on that subject.[3]  I excluded the Keegan Report because Keegan used a flawed control and an improper respondent universe.[4]

## III.   LEGAL STANDARD FOR RECONSIDERATION

Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court.[5]  A motion for reconsideration is appropriate where "'the moving party can point to controlling

---

[2]      *See* BestMed's Opposition to Medisim's Motion for Reconsideration ("BestMed Mem.").

[3]      *See Medisim Ltd. v. BestMed, Inc.*, No. 10 Civ. 2463, 2012 WL 718041, at * 11 (S.D.N.Y. March 7, 2012) ("March Opinion").

[4]      *See id.* at *15.

[5]      *See Patterson v. United States*, No. 04 Civ. 3140, 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006 ) ("The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court.") (citing *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983)).

decisions or data that the court overlooked – matters, in other words, that might

reasonably be expected to alter the conclusion reached by the court.'"[6]  A motion

for reconsideration may also be granted to "'correct a clear error or prevent

manifest injustice.'"[7]

       The purpose of Local Rule 6.3 is to "'ensure the finality of decisions

and to prevent the practice of a losing party examining a decision and then

plugging the gaps of a lost motion with additional matters.'"[8]  Local Rule 6.3 must

be "narrowly construed and strictly applied so as to avoid repetitive arguments on

issues that have been considered fully by the Court."[9]  Courts have repeatedly been

forced to warn counsel that such motions should not be made reflexively, to

reargue "'those issues already considered when a party does not like the way the

---

[6]     *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)), *abrogated on other grounds by In re Zarnel*, 619 F.3d 156 (2d Cir. 2010).

[7]     *RST (2005) Inc. v. Research in Motion Ltd.*, No. 07 Civ. 3737, 2009 WL 274467, at *1 (S.D.N.Y. Feb. 4, 2009) (quoting *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

[8]     *Grand Crossing, L.P. v. United States Underwriters Ins. Co.*, No. 03 Civ. 5429, 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008) (quoting *SEC v. Ashbury Capital Partners*, No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001).

[9]     *United States v. Treacy*, No. 08 Cr. 0366, 2009 WL 47496, at *1 (S.D.N.Y. Jan. 8, 2009) (quotation omitted).

original motion was resolved.'"[10]  A motion for reconsideration is not an

"opportunity for making new arguments that could have been previously

advanced,"[11] nor is it a substitute for appeal.[12]

## IV.   DISCUSSION

### A.   Lipson May Testify as to "Deep Tissue Temperature" Insofar as He Does Not Rely on His Flawed Empirical Testing

In the March Opinion, I concluded  – based on the arguments of the

parties and the scientific literature reviewed by the experts – that it is impossible to

measure "deep tissue temperature" – as that term was construed in the *Markman*

Opinion – without using the zero-heat-flux method.  Because of this conclusion, I

held that Lipson would not be allowed to testify that the Accused Products met the

"deep tissue temperature" limitation of the '668 Patent.[13]

Medisim argues that this holding was flawed in two ways.  *First*, it

argues that I misread the scientific literature, and that it is indeed possible to

---

[10]     *Makas v. Orlando*, No. 06 Civ. 14305, 2008 WL 2139131, at *1 (S.D.N.Y. May 19, 2008) (quoting *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996)).

[11]     *Associated Press v. United States Dep't of Defense*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005).

[12]     *See Grand Crossing, L.P. v. United States Underwriters Ins. Co.*, No. 03 Civ. 5429, 2008 WL 4525400 (S.D.N.Y. Oct. 6, 2008).

[13]     *See* March Opinion, 2012 WL 718041, at *11-12.

measure "deep tissue temperature" without the zero-heat-flux method, as indicated by Lipson's empirical testing of the KD-2201 in "test mode."  *Second*, it argues that my exclusion of Lipson's "deep tissue temperature" opinions was overly broad, as the flaws identified in the March Opinion only relate to a portion of his testimony on the subject.[14]

Medisim's first argument is rejected for three reasons.  *First*, Medisim does not point to new evidence, or evidence that this Court overlooked.  *Second*, Medisim does not argue that this facet of the March Opinion results in manifest injustice.  *Third*, and most importantly, it does nothing more than register the belief that the March Opinion was incorrect as a technical matter.  Such an argument is a matter for appeal, not reconsideration.[15]  Accordingly, Lipson may not testify that

---

[14]    *See* Medisim Mem. at 2-5.

[15]    Moreover, Medisim's argument that the March Opinion was technically incorrect is unpersuasive on the merits.  The core of its argument is that Sessler and Yamakage/Namiki used different terminology than the '668 Patent, and were therefore wrongly applied to this case.  *See id.* at 3-4.  The parties agreed at the *Markman* hearing to use the claim language itself, which defines deep tissue temperature as the temperature of the body "at a location under the skin that is a source of heat conducted to the one or more temperature sensors."  *See* 4/28/11 Tr. at 108:17-109:16.  In the March Opinion, I concluded that the scientific literature upon which Lipson relied indicates that the zero-heat-flux method allows measurement to a depth of approximately one centimeter, making it possible to measure the temperature in blood vessels near the skin's surface.  Because these blood vessels are the source of heat to a temperature sensor resting on the skin, it is therefore possible to measure "deep tissue temperature" using the zero-heat-flux method.  *See* March Opinion, 2012 WL 718041, at *11.  What Sessler and Yamakage/Namiki actually describe – as opposed to the terms they use to describe

the KD-2201 meets the "deep tissue temperature" limitation of the '668 Patent based on his empirical testing of that product in "test mode."

Medisim next argues that the March Opinion overlooked the possibility that Lipson's "deep tissue temperature" opinions might find independent support in the 510(k) letters – including an American Society for Testing and Materials ("ATSM") standard referenced therein – and deposition testimony of K-Jump witnesses referenced in his report.  Accordingly, it asserts that Lipson should be allowed to give his "deep tissue temperature" opinions based on those materials ("Reconsideration Materials").[16]

As explained in the March Opinion, I have serious doubts regarding whether Lipson's "deep tissue temperature" opinions are correct.  On the strength of those concerns, I found that Lipson's opinions on the subject was a mere *ipse dixit*, and that accepting it as reliable would therefore violate my duty as a gatekeeper.  Because of my focus on that issue, I did not give adequate consideration to the Reconsideration Materials – which were more heavily referenced in Lipson's claim chart than in the main text of his report – in the March Opinion.

The Reconsideration Materials – all of which come from K-Jump

it – is fully consistent with this view.

[16]     *See* Medisim Mem. at 4-5.

-6-

sources – are independent of Lipson's flawed empirical testing.  Having now reviewed them more fully, I find that they provide a sufficiently sound basis for Lipson's opinion that the KD-2201 meets the "deep tissue temperature" limitation of the '668 Patent.  Because the Federal Rules of Evidence – and the case law in this Circuit – favor the admissibility of expert testimony and because courts should focus on an expert's methodology rather than his ultimate conclusions, this finding now leads me to conclude that Lipson may testify that the KD-2201 meets the "deep tissue temperature" limitation of the '668 Patent.  Accordingly, I now hold that he may give such testimony, insofar as it is based on the Reconsideration Materials.

### B.    The Keegan Report Remains Excluded

Medisim argues that, with respect to the Keegan Report, the March Opinion is flawed in two ways.  *First*, it argues that I misunderstood the reasons why Dr. Keegan selected his respondent universe, and that his selection was not flawed.  *Second*, it argues that I failed to consider whether the Keegan Report was admissible evidence on its state law claims.[17]

### 1.    Medisim's Arguments Regarding Keegan's Respondent Universe Are Not Grounds for Reconsideration

Medisim's argument that Keegan correctly chose his respondent

---

[17]    *See* Medsim Mem. at 6-10.

universe – surveying *users* of digital thermometers instead of *potential purchasers* – is substantially the same as that which it made in response to BestMed's original motion to exclude Keegan's report.  Although Medisim now fleshes out its argument on this point in response to the March Opinion, it points to nothing that could reasonably be expected to alter the conclusion reached therein.  The Court fully understood the import of the argument, and rejected it for all of the reasons noted in the March Opinion.[18]  Accordingly, the conclusion that the Keegan Report is flawed in this regard stands, and Medisim's first ground for reconsideration is rejected.

> **2.     The Argument that the Keegan Survey Should Have Been Admitted on Certain State Law Claims Is Untimely**

In the original *Daubert* submissions, the parties focused the Court's attention on the admissibility of the Keegan Survey with respect to Medisim's Lanham Act claims.  Medisim now argues at length that even if the Keegan Survey was properly excluded on its Lanham Act claims, it should be admitted as relevant evidence on its claims under sections 349 and 350 of New York's General Business Law, as well as common law unfair competition.[19]  These arguments are untimely.  Medisim was free to argue that the Keegan Survey should be admitted

---

[18]     *See* March Opinion, 2012 WL 718041, at *13-14.

[19]     *See* Medisim Mem. at 8-10.

solely as to its state law claims, but did not do so.  Instead, Medisim chose to focus

this Court's attention on those sections of its Complaint relating solely to *federal*

patent, copyright, and trademark laws.[20]

        Regardless of *why* it made the arguments it did in the underlying

motion papers, there is no doubt that the theory of admissibility Medisim now

posits is raised for the first time on this motion.   It would be difficult to conceive

of a clearer example of "a losing party examining a decision and then plugging the

gaps of a lost motion with additional matters."  Accordingly, this argument for

reconsideration is also rejected.[21]

---

[20]     *See* Medisim's Memorandum of Law in Opposition to BestMed's Motion to Strike Portions of Plaintiff's Experts, Lipson and Keegan, at 19.  Indeed, that argument would raise entirely new issues under Federal Rule of Evidence 403, as the probative value of the Keegan Survey on the state law claims might well be outweighed by the danger of confusing the issues before the jury.

[21]     Furthermore, this new limited-admissibility theory may be without merit.  As other courts in this district have explained, "[i]t is well settled that . . . trademark or trade dress infringement claims are not cognizable under [sections 349 and 350 of New York's General Business Law] unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution."  *See*, *e.g.*, *National Distillers Prods. Co., LLC v. Refreshment Brands, Inc.*, 198 F. Supp. 2d 474, 486-87 (S.D.N.Y. 2002). Likewise, the Second Circuit has stated that trademark or trade dress claims brought under the guise of the New York common law of unfair competition have identical requirements as Lanham Act unfair competition claims, except that the former requires an additional showing of bad faith or intent.  *See Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 383 (2d Cir. 2000).  *See also U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 538 (S.D.N.Y. 2011).  It stands to reason that if a survey is so flawed as to require exclusion on Lanham Act claims, it cannot support claims that require additional

## V.    CONCLUSION

For the reasons noted above, BestMed's motion to reconsider is granted in part and denied in part as follows:

1)    Lipson may testify that the KD-2201 meets the "deep tissue temperature" limitation of the '668 Patent based on his understanding of the Reconsideration Materials;

2)    The Keegan Survey remains excluded in its entirety.

The Clerk of the Court is directed to close this motion (Docket No. 76).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            April 23, 2012

---

showings *beyond* those of the Lanham Act.

-10-

**- Appearances -**

**For Medisim Ltd.:**

Richard H. Brown, Esq.
Gerald Levy, Esq.
Keith J. McWha, Esq.
Day Pitney LLP
7 Times Square
New York, New York 10036
(212) 297-5800

**For BestMed LLC:**

Nicholas L. Coch, Esq.
Kramer, Levin, Naftalis & Frankel, LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9118

Talivaldis Cepuritis, Esq.
Joseph M. Kuo, Esq.
Anita M. Cepuritis, Esq.
Olson & Cepuritis, LTD.
20 North Wacker Drive, 36th Floor
Chicago, Illinois 60606
(312) 580-1180