# United States Court of Appeals for the Federal Circuit

---

**MEDISIM LTD.,**
*Plaintiff-Appellant,*

v.

**BESTMED, LLC,**
*Defendant-Appellee.*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 14, 2014

---

2013-1451

---

Appeal from the United States District Court for the Southern District of New York in No. 10-CV-2463, Judge Shira Ann Scheindlin.

---

Decided: July 14, 2014

---

SCOTT S. CHRISTIE, McCarter & English, LLP, of Newark, New Jersey, argued for plaintiff-appellant. With him on the brief were KEITH J. MCWHA, MARK H. ANANIA, MATTHEW A. SKLAR, and ELINA SLAVIN. Of counsel was GERALD LEVY, of New York, New York.

DAN L. BAGATELL, Perkins Coie, LLP, of Phoenix, Arizona, argued for defendant-appellee. With him on the brief were MATTHEW B. DU MÉE; and DAVID R. PEKAREK KROHN, of Madison, Wisconsin.

---

Before PROST, *Chief Judge*, TARANTO and CHEN, *Circuit Judges*.

PROST, *Chief Judge*.

Plaintiff-Appellant Medisim Ltd. ("Medisim") appeals the grant of judgment as a matter of law ("JMOL") by the United States District Court for the District of New York that U.S. Patent No. 7,597,668 ("'668 patent") is anticipated by Medisim's own prior art FHT-1 thermometer. *See Medisim Ltd. v. BestMed LLC*, 959 F. Supp. 2d 396, 425 (S.D.N.Y. 2013). It also appeals the district court's grant of JMOL in BestMed, LLC's ("BestMed") favor on Medisim's unjust enrichment claim. *Id.* at 426. Because BestMed failed to preserve its right to JMOL on anticipation under Federal Rule of Civil Procedure 50, we vacate the district court's grant of JMOL on that claim. However, we affirm the district court's grant of JMOL on Medisim's unjust enrichment claim and its conditional grant of a new trial on anticipation. We remand this case for further proceedings.

I. BACKGROUND

Medisim owns the '668 patent, which is directed to a fast non-invasive thermometric device that displays a core body temperature. '668 patent col. 2 ll. 13-15. The claimed device is placed against an external skin surface, takes temperature readings from one or more temperature sensors, determines time-dependent parameters of temperature change responsive to those readings, and calculates a deep tissue temperature. *Id.* at col. 1 l. 57-col. 2 l. 5. The claimed device then calculates a core body temperature by correcting for the difference between the deep tissue temperature and the core body temperature. *Id.* at col. 2 ll. 6-12. Claim 1 is representative:

1. A thermometric device, comprising:
a probe, comprising:

   a membrane configured to be applied to an external surface of a body of a subject; and
   one or more temperature sensors located within the probe in thermal contact with the membrane; and
a processing unit configured to receive a plurality of temperature readings from the one or more temperature sensors, to determine time-dependent parameters of temperature change responsively to the plurality of temperature readings, to calculate, a deep tissue temperature of the body at a location under the skin that is a source of heat conducted to the one or more temperature sensors, and to calculate a core body temperature by correcting for a difference between the core body temperature and the deep tissue temperature.

*Id.* at col. 10 ll. 2-18. The other independent claim, 21, recites the same concept in method format. *Id.* at col. 11 ll. 25-41.

More than a year before filing the application that eventually issued as the '668 patent, Medisim marketed and sold the FHT-1 thermometer. Therefore, Medisim's own product qualifies as prior art to the '668 patent under 35 U.S.C. § 102(b).[1] The FHT-1 thermometer uses a heat-flux algorithm disclosed in another Medisim patent, U.S. Patent No. 6,280,397 ("'397 patent"), which covers a method of quickly estimating a local body temperature. *See* '397 patent col. 2 l. 60-col. 3 l. 6.

---

[1] The America Invents Act ("AIA"), Pub. L. No. 112-29, took effect on March 18, 2013. Because the application for the patent at issue in this case was filed before that date, we refer to the pre-AIA version of § 102.

From November 2004 to May 2007, BestMed marketed and sold several of Medisim's thermometers in the United States under an "International Distribution Agreement" ("IDA"). While the IDA was in effect, BestMed was privy to technical information concerning many of Medisim's thermometers and its testing procedures, including its water bath testing protocol. This water bath testing protocol enabled Medisim's thermometers to be approved by the Food and Drug Administration for sale in the United States.

In 2008, the parties entered into a new "Purchase and Sale Agreement" ("PSA"), which set out the terms governing the parties' separation. The PSA authorized the parties to offer competing products to current customers as long as delivery occurred after May 1, 2009. The parties also released all claims that had arisen or might arise out of their past performance or disputes regarding the IDA.

After the expiration of the PSA, BestMed began selling competing thermometer products made by K-Jump Health Co. Ltd.

## II. Procedural History

Medisim filed suit against BestMed in the Southern District of New York on March 17, 2010, accusing BestMed, inter alia, of directly and indirectly infringing the '668 patent by selling the K-Jump thermometers and of benefitting from unjust enrichment. Before the case was submitted to the jury, both parties made several motions requesting JMOL under Federal Rule of Civil Procedure 50(a). In opposing Medisim's motion for JMOL of no anticipation, BestMed's counsel stated: "On . . . anticipation, I submit that the jury can readily find that the FHT-1 product, Medisim's own product, is anticipatory. There's clear and convincing evidence, we submit, on that issue. Also [Medisim's witnesses'] testimony support[s]

that position. But, again, it's definitely something for the jury." J.A. 4530.

In addition, BestMed expressly moved for JMOL under Rule 50(a) of no unjust enrichment at the close of Medisim's case-in-chief, generally contending that "[t]here is no evidence of unjust enrichment" and particularly challenging Medisim's evidence on each element of the claim. J.A. 4141. The district court denied all JMOL motions, and the jury found the '668 patent to be not invalid and infringed. *See Medisim*, 959 F. Supp. 2d at 398. The jury awarded Medisim $1.2 million in patent infringement damages and $2.29 million in damages for its unjust enrichment claim. *Id.*

Following the jury verdict, BestMed moved for JMOL of anticipation and no unjust enrichment under Rule 50(b). *Medisim*, 959 F. Supp. 2d at 399. The district court granted those motions, overturning the verdict and finding that the asserted claims of the '668 patent are anticipated by the FHT-1 thermometer. *Id.* at 425. Further, the district court noted that to the extent that BestMed's sales of the accused products occurred during the operation of the contracts between the parties (i.e., before May 1, 2009), any claim for unjust enrichment was waived by those contracts. *Id.* It then found that Medisim's remaining unjust enrichment claim for any period after May 1, 2009, was not grounded in the record, as "there was no evidence to support a finding that BestMed received an incremental benefit over that compensable by the patent laws." *Id.* at 426. The district court also granted BestMed a new trial on anticipation, "conditioned on an appellate court determining that [BestMed] failed to preserve its right to bring a post-trial motion for JMOL." *Id.* at 421.

The district court's ruling vacated Medisim's entire damages award, and Medisim has appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## III. Discussion

This appeal concerns Medisim's challenges to the district court's grant of JMOL on anticipation and unjust enrichment. Medisim argues that BestMed forfeited its right to JMOL under Rule 50(b) for both claims when it failed to properly move for JMOL under Rule 50(a) at the close of evidence. Medisim also challenges the district court's grant of JMOL on anticipation and unjust enrichment on the merits. Finally, Medisim argues that the district court abused its discretion by granting a conditional new trial on anticipation. We address each of Medisim's challenges in turn.

### A. Forfeiture of JMOL

Federal Rule of Civil Procedure 50 sets forth the procedural requirements for challenging the sufficiency of the evidence in a civil jury trial and establishes two stages for such challenges. Rule 50(a) allows a party to challenge the sufficiency of the evidence prior to submission of the case to the jury. *See* Fed. R. Civ. P. 50(a). Rule 50(b), by contrast, sets forth the procedural requirements for renewing a sufficiency of the evidence challenge after the jury verdict. *See id.* 50(b); *see generally Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 399-400 (2006). These two provisions are linked together, as "[a] motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008).

In the past we have found that parties forfeited the right to move under Rule 50(b) by failing to first properly move under Rule 50(a). For example, in *Duro-Last, Inc. v. Custom Seal, Inc.*, we rejected the appellant's contentions that its specific JMOL motions at the close of evidence regarding inequitable conduct and the on-sale bar encompassed broader motions that the patents were not invalid for obviousness. 321 F.3d 1089, 1107-08 (Fed. Cir. 2003).

We then explained that "[s]ince a post-trial motion for JMOL can be granted only on grounds advanced in the pre-verdict motion, Duro-Last was precluded from making a post-trial motion under Rule 50(b) for JMOL that its patents were not invalid for obviousness." *Id.* at 408. Similarly, in *i4i Limited Partnership v. Microsoft Corp.*, we concluded that the appellant waived its right to challenge the factual findings underlying the jury's implicit obviousness verdict because it did not file a pre-verdict JMOL on obviousness for three specific references. *See* 598 F.3d 831, 845 (Fed. Cir. 2010) *aff'd*, 131 S. Ct. 2238 (2011). With this precedent in mind, we can now turn to the questions of whether BestMed failed to properly move for JMOL on anticipation and unjust enrichment.

1. Forfeiture of JMOL on Anticipation

Medisim first argues that BestMed failed to move for JMOL on anticipation under Rule 50(a), so it was foreclosed from doing so under Rule 50(b). Therefore, Medisim claims that the district court should have refrained from ruling on anticipation after the jury verdict under Rule 50(b).

BestMed denies such forfeiture. In support of its argument, it points to a statement it made on the record at the close of evidence in opposition to Medisim's JMOL motion for no anticipation. Its counsel stated: "On . . . anticipation, I submit that the jury can readily find that the FHT-1 product, Medisim's own product, is anticipatory. There's clear and convincing evidence, we submit, on that issue. Also [Medisim's witnesses'] testimony support[s] that position. But, again, it's definitely something for the jury." J.A. 4530.

While BestMed concedes that this statement was "not a model of clarity," it argues that Medisim was on notice of BestMed's position. Appellant's Br. 59. Further, BestMed notes that when Medisim moved to strike BestMed's Rule 50(b) motion on anticipation, the district court

recognized that BestMed had "asserted its present invalidity contentions on the record, and the Court ha[d] stated that all of its contentions had been re-asserted and preserved." Order at 3, *Medisim Ltd. v. BestMed LLC*, No. 1:10-cv-02463 (S.D.N.Y. Mar. 18, 2013), ECF No. 190. The district court concluded that Medisim had not been unfairly surprised by BestMed's anticipation contentions. *Id.* The district court explained:

> [T]he rule of *Duro-Last, Inc. v. Custom Seal, Inc.*, which *i4i Partnership* applies, is based on the proposition that it would be impermissible under the Seventh Amendment to re-examine the jury's verdict upon grounds not raised prior to the verdict. Here, this rule is easily met: BestMed has pressed its invalidity contentions since well before the jury was sworn, the jury was instructed as to invalidity, and BestMed presented its present invalidity contentions, and its supporting evidence, on the record.

*Id.* at 4.

While Medisim may not have been surprised by BestMed's invalidity contentions, the Supreme Court has held previously that our Federal Rules of Civil Procedure are to be strictly followed in circumstances such as this one. In *Unitherm*, for example, a party moved for a directed verdict under Rule 50(a) prior to the district court's submission of the case to the jury, but following the verdict the party failed to renew its motion for JMOL pursuant to Rule 50(b). *See* 546 U.S. at 398. In preventing the party from challenging the sufficiency of the evidence on appeal, the Supreme Court stated that "a party is not entitled to pursue a new trial on appeal unless that party makes an appropriate postverdict motion in the district court." *Id.* at 404. While the issue here is whether BestMed failed to move under Rule 50(a), the principle of forfeiture articulated in *Unitherm* re-

mains the same. *See, e.g.*, *Yakus v. United States*, 321 U.S. 414, 444 (1944) ("No procedural principle is more familiar to this Court than that a . . . right may be forfeited . . . by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.").

With that principle in mind, we conclude that BestMed forfeited its right to move for JMOL on anticipation. The statement that BestMed now relies on as evidence of a motion for JMOL actually indicates the opposite— BestMed's counsel stated that anticipation was "definitely something for the jury." J.A. 4530. Further, BestMed's counsel made this statement in opposition to Medisim's motion for JMOL under Rule 50(a); BestMed never moved on its own for JMOL on anticipation before the case was submitted to the jury. *See id.* Indeed, BestMed's counsel conceded that BestMed "did not expressly say [that] we cross-move for JMOL when they moved for JMOL on the anticipation issue . . . ." Oral Arg. 22:59-23:08 *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/13-1451/all. Finally, regarding the district court's statement that BestMed had "preserved the record, [and] renewed all the motions previously made," we note that this statement was made following a discussion of BestMed's unjust enrichment claims. *See* J.A. 4398. The district court's later statement that "the [c]ourt ha[d] stated that all of its contentions had been re-asserted and preserved" came only after Medisim requested that the district court strike BestMed's Rule 50(b) motion regarding validity. *See* Order at 3, *Medisim Ltd. v. BestMed LLC*, No. 1:10-cv-02463 (S.D.N.Y. Mar. 18, 2013), ECF No. 190. But by then it was too late—BestMed had already forfeited the right to move for JMOL under Rule 50(b). Therefore, we conclude that the district court legally erred in ruling on any validity issues after the jury verdict under Rule 50(b).

Because we vacate the district court's grant of JMOL on anticipation due to forfeiture, we need not consider

whether the district court erred in granting JMOL on anticipation on the merits.

2.  No Forfeiture of JMOL on Unjust Enrichment

We next turn to Medisim's procedural challenge to the district court's grant of JMOL on unjust enrichment. Again, Medisim argues that BestMed forfeited its right to move for JMOL under Rule 50(b) when it failed to properly move for JMOL under Rule 50(a). Medisim claims that although BestMed did move for JMOL under Rule 50(a), the basis for its pre-verdict motion bears no resemblance to the basis for its post-verdict Rule 50(b) motion.

BestMed responds that it expressly moved for JMOL of no unjust enrichment at the close of Medisim's case-in-chief, generally contending that "[t]here is no evidence of unjust enrichment" and particularly challenging Medisim's evidence on each element of the claim. J.A. 4141. BestMed alleges that the district court cut BestMed's counsel off and denied the motion. When BestMed's counsel tried to renew BestMed's JMOL motions later, the district court barred any further discussion, saying "you preserved the record." J.A. 4398.

We conclude that BestMed did not forfeit its right to move for JMOL on unjust enrichment under Rule 50(b) because it adequately made such a motion under Rule 50(a). On appeal, Medisim bases its unjust enrichment argument on misappropriation of its allegedly proprietary water bath testing procedure, but during a two-week trial Medisim did not present much evidence on this issue. In fact, during oral argument, we asked Medisim's counsel to show us where in the record it had presented an unjust enrichment claim based on its water bath testing procedure. Medisim's counsel responded by saying, "At this point I couldn't specifically say where . . . ." Oral Arg. 18:07-11 *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/13-1451/all. He then admitted that "[s]ometimes things are not as precise as you would like."

*Id.* at 18:46-49.  After reviewing the record, we too could not find a precise presentation of an unjust enrichment claim based on the water bath testing procedure.  Instead, Medisim used its unjust enrichment claim to request a disgorgement-of-profits remedy without explaining its basis for the actual claim.  Faced with a generic case, BestMed could only make a generic motion under Rule 50(a).  And it clearly accomplished that—its motion explained why Medisim was not entitled to prevail on unjust enrichment because it had failed to show that it had been denied a legitimate expectation of compensation, a necessary element of the claim.  Since we conclude that there was no forfeiture of JMOL under Rule 50(b), we next review whether the district court erred in granting BestMed's motion on the merits.

### B.  Grant of JMOL on Unjust Enrichment

The Second Circuit reviews "a district court's resolution of a motion for judgment as a matter of law" de novo and applies "the same standard as the district court itself was required to apply." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (citations omitted).  In doing so, the Second Circuit will "consider the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences from the evidence that the jury might have drawn in that party's favor," *id.* (citation omitted), but "cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury," *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 429 (2d Cir. 1995) (citations omitted).  Unjust enrichment requires "1) that the defendant benefited; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (citation omitted).

Below, the district court found that there was no evidence in the record to support the jury's award of damag-

es to Medisim for unjust enrichment. *Medisim*, 959 F. Supp. 2d at 425-26. It noted that "[t]o the extent that BestMed's sales of the accused products occurred during the operation of the IDA and the PSA, any claim for unjust enrichment is waived by those contracts," which Medisim conceded. *Id.* at 425 n.180. Therefore, the only issue that remains is whether Medisim is entitled to damages for unjust enrichment following the expiration of the IDA and PSA.

Medisim argues that its unjust enrichment claim is based on the enrichment that BestMed obtained from selling thermometers developed through the unauthorized use of Medisim's proprietary, non-public information, to Medisim's detriment. Specifically, Medisim argues that it developed a successful water bath testing procedure, which was a prerequisite to selling thermometers in the United States. It claims that it was particularly difficult to develop a reliable procedure for devices that calculated approximations of core body temperatures rather than temperatures measured at the surface of the skin.

BestMed responds that although Medisim now makes water bath testing the focus of its unjust enrichment case, that issue was only a small part of Medisim's overall unfair competition case below, and Medisim never asked the jury to find unjust enrichment on that basis. Indeed, BestMed argues that the unjust enrichment claim "fell in the interstices" of Medisim's other claims. *See Medisim*, 959 F. Supp. 2d at 417.

We agree with BestMed. During trial, Medisim failed to present any evidence to support a finding that BestMed received an incremental benefit from Medisim's allegedly proprietary water bath testing procedure over that compensable by the patent laws. It grouped together its patent and non-patent damages claims, relying on BestMed's profits from all of the accused products. *See Medisim*, 959 F. Supp. 2d at 426 n.182. Medisim offered no

evidence to show why BestMed had reason to think that Medisim's procedures for water bath testing were confidential or otherwise proprietary. Thus, even when viewing all the evidence in the light most favorable to Medisim, we cannot conclude that equity and good conscience require restitution.

### C. Conditional Grant of New Trial on Anticipation

Finally, we turn to the district court's conditional grant of a new trial. A court may set aside the verdict and order a new trial even if no motion for JMOL was made under Rule 50(a). *See Bracey v. Bd. of Educ. of City of Bridgeport*, 368 F.3d 108, 117-20 (2d Cir. 2004) (granting Rule 59 motion in the absence of a Rule 50(a) motion); *MacQuesten Gen. Contracting, Inc. v. HCE, Inc.*, 128 F. App'x 782, 784 (2d Cir. 2005) ("While MacQuesten failed during the trial to make a motion for judgment as a matter [of] law pursuant to Rule 50(a), that is no impediment to a Rule 59(a) motion."). In the Second Circuit, "[a] motion for new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 51 (2d Cir. 2012) (citation omitted). The Second Circuit reviews whether a district court properly granted a new trial under an abuse of discretion standard. *Binder v. Long Island Lighting Co.*, 57 F.3d 193, 202 (2d Cir. 1995).

Below, the district court did not elaborate on its reasons for granting BestMed's motion for a new trial, conditioned on our determination that BestMed failed to preserve its right to bring a post-trial motion for JMOL on anticipation. Instead, it made its ruling in a footnote. *See Medisim*, 959 F. Supp. 2d at 421 n.158.

Medisim challenges the district court's reasoning, or more accurately the lack thereof, arguing that the district court failed to state the grounds for conditionally granting

the motion for a new trial as required in Federal Rule of Civil Procedure 50(c)(1). Medisim argues that in addressing the request for a new trial only in a footnote, the district court did not provide any legal or evidentiary grounds to support the conditional grant. It claims that in its brevity, the district court abused its discretion. *See, e.g.*, *Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514, 1524 (6th Cir. 1990) (stating that "[t]he district court's failure to state a basis for conditionally granting the new trial, provides another reason for finding that a new trial is unwarranted").

However, BestMed argues this was not a case where the court found the verdict against the weight of the evidence without further elaboration. It notes that the district court provided a detailed explanation as to why it found that BestMed had proven anticipation. *See Medisim*, 959 F. Supp. 2d at 420-25.

We agree with BestMed. Given the context and the surrounding discussion, the district court's reasoning is clear enough to pass Rule 50(c)(1) muster. The section of its opinion where the district court conditionally granted the new trial is entitled "The '668 Patent Is Anticipated by the FHT-1 Thermometer." *Medisim*, 959 F. Supp. 2d at 420. In that section, the district court calls BestMed's anticipation argument overwhelmingly strong. *Id.* The district court then proceeds to discuss all of the evidence which supports its conclusion, which we summarize here. *Id.* at 420-25.

The record shows that Medisim's expert witness, Dr. Lipson, conceded that the FHT-1 calculated an intermediate temperature and that if "the intermediate temperature calculated by . . . the prior art FHT-1 thermometer, is a deep tissue temperature," then the FHT-1 anticipates claim 1 of the '668 patent and "whatever [other claims] require[] the deep tissue limitation." J.A. 4442-43. Therefore, as the district court correctly noted, anticipa-

tion turns on one issue in this case: whether the intermediate temperature concededly calculated by the FHT-1 using the heat-flux algorithm of the '397 patent qualifies as a deep tissue temperature as claimed in the '668 patent.

The specification of the '668 patent relies on the '397 patent to provide the algorithm to compute its deep-tissue temperature. The '668 patent defines a local, deep-tissue temperature as "a temperature at a location under the skin that is the source of heat conducted to the sensors in the probe." '668 patent col. 6 ll. 59-62. It also expressly describes the "heat flux calculation" of the '397 patent as a method "to rapidly compute a *deep tissue temperature* of the body." *Id.* at col. 1 ll. 65-67 (emphasis added). The specification further describes a processing unit that uses the heat-flux algorithm of the '397 patent to generate the deep-tissue temperature. *Id.* at col. 6 ll. 55-59 ("Using the heat flux algorithm described in the above-mentioned U.S. Pat. No. 6,280,397 . . . , the processing unit calculates from the temperature readings a local temperature."); col. 7 ll. 16-17 ("[T]he value of local body temperature determined by the '397 algorithm."). In the preferred embodiment, the deep-tissue temperature is converted to a core-body temperature using an equation that includes the output of the heat-flux algorithm of the '397 patent, denoted Tavg. *Id.* at col. 9 ll. 34-36 (equation); col. 9 ll. 62-63 (defining Tavg as the output of the heat-flux algorithm of the '397 patent). This intrinsic evidence, all discussed by the district court, heavily supports the conclusion that the FHT-1 calculates a deep tissue temperature and, therefore, anticipates the '668 patent.

BestMed's expert, Mr. Goldberg, also offered supporting testimony, which the district court considered. For example, Mr. Goldberg identified particular portions of code that shows a calculation of a deep tissue temperature. Additionally, Medisim produced and distributed many pre-litigation documents stating that its R.A.T.E.™

Case: 14-1453    Document: 52-2    Page: 16    Filed: 07/14/2014
Case 1:10-cv-02463-SAS   Document 223   Filed 07/14/14   Page 16 of 17

16                        MEDISIM LTD. v. BESTMED, LLC

technology as found in the FHT-1 thermometer measures the temperature under the skin. While not dispositive in and of themselves,[2] these documents further support the district's court conclusion that BestMed is entitled to a new trial. For example, one such document stressed that "[i]n R.A.T.E ™ technology we do not use [a] prediction for getting the final temperature, but we use [a] calculation in real time of the temperature beneath the skin." J.A. 9454. Medisim tried to dismiss this evidence as marketing fluff, but the documents addressed sophisticated audiences and contained equations and other technical descriptions. This too supports the conclusion that the R.A.T.E ™ technology found in the FHT-1 used the heat-flux algorithm of the '397 patent in the same way described in the '668 patent.

While we acknowledge that the district court's discussion of the aforementioned evidence ends with the grant of JMOL on anticipation, we conclude that this same reasoning is applicable to the conditional grant of a new trial. Therefore, the district court's conditional grant of a new trial was amply supported by the evidence. It did not abuse its discretion in granting BestMed's motion for a new trial.

Medisim also challenges the district court's statement that, should the case be remanded for a new trial, it would "then entertain a motion for summary judgment on anticipation." *Medisim*, 959 F. Supp. 2d at 421 n.158. It argues that the district court has already "pre-judged this

---

[2] A trademark acts as an identifier of the source of goods or services and does not automatically evidence meaning as to functionality. 15 U.S.C. §§ 1052 & 1127; *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*, 696 F.3d 206, 218 (2d Cir. 2012) (citing *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995)).

summary judgment motion in BestMed's favor." Appellant's Br. 57. But Medisim's contention is premature. We repeat, however, what we said in a previous case: "In remanding for a limited new trial [on literal infringement and obviousness] . . . we do not foreclose the district court from entertaining a motion for summary judgment on these issues that might obviate the need for a further trial." *ArcelorMittal Fr. v. AK Steel Corp.*, 700 F.3d 1314, 1326 (Fed. Cir. 2012).

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's grant of JMOL regarding Medisim's unjust enrichment claims. We vacate the district court's grant of JMOL regarding Medisim's anticipation claims but affirm its conditional grant of a new trial. We remand this case to the district court for further proceedings consistent with this opinion.

**AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**